IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JULIE DUNLOP ESPINOZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:00-CV-1975-L |
| | § | |
| TEXAS DEPARTMENT OF PUBLIC SAFETY and TOMMY DAVIS, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are: (1) Defendants['] Motion to Dismiss and Alternatively Motion for Summary Judgment, filed March 5, 2007; (2) Plaintiff[']s Motion for Partial Summary Judgment, filed March 5, 2007; and (3) Defendants['] First Supplemental Motion to Dismiss Rehabilitation Act Claims, filed April 23, 2007. After careful consideration of the motions, responses, replies, record and applicable law, the court **denies** Defendants['] Motion to Dismiss and Alternatively Motion for Summary Judgment, **denies** Plaintiff[']s Motion for Partial Summary Judgment, and **denies** Defendants['] First Supplemental Motion to Dismiss Rehabilitation Act Claims.

## I. Procedural and Factual Background

Plaintiff Espinoza brought this action against Defendants, the Texas Department of Public Safety and Tommy Davis, alleging claims of disability discrimination under Title II of the Americans with Disabilities Act and section 504 of the Rehabilitation Act. Espinoza filed her Second Amended Complaint ("Complaint") on October 27, 2006.

Espinoza alleges that she contracted juvenile rheumatoid arthritis as a child, and that as a result, she walks using crutches or uses a motorized scooter. Compl. ¶ 7. Espinoza contends that

she was first granted a driver's license by the state of Texas on June 30, 1983, and that she has held a license since that date without receiving a citation or being involved in an accident. *Id*. ¶¶ 8-9.

Espinoza's claims of discrimination are based upon her attempt to renew her driver's license at a DPS office in Mesquite, Texas on May 4, 2000. *Id*. ¶ 10. Plaintiff was allegedly questioned by the clerk about her ability to drive and what prosthetic devices she used to drive. *Id*. ¶ 11. The clerk renewed her driver's license, but Plaintiff contends that she could not reach the fingerprint device required to be used as part of the license renewal process. *Id*. ¶ 12.

After renewing her license, Plaintiff received a letter from DPS dated June 9, 2000 requiring that Espinoza "demonstrate [her] qualifications as a driver by passing a comprehensive examination." *Id*. ¶ 13. Espinoza called DPS and was informed that the DPS clerk had reported her as a possible unsafe driver. *Id.* ¶ 14. The form submitted by the clerk stated that Espinoza "didn't walk too well" and that she was "paralyzed on her left side." *Id*. Espinoza contends that she has never been paralyzed. *Id*. Espinoza responded to the DPS letter through counsel, and DPS sent her another letter dated July 31, 2000 refusing to withdraw its request that she take a comprehensive examination. *Id*. ¶¶ 15-16.

## II. Legal Standards

### A. Rule 12(b)(6) - Standard for Dismissal for Failure to State a Claim

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. A court, however, is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

**B. Summary Judgment Standard**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence

in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Analysis

### A. Defendants' Motion to Dismiss or Motion for Summary Judgment

Defendants DPS and Tommy Davis (collectively, "DPS") have moved to dismiss and alternatively for summary judgment, arguing that Espinoza lacks standing to bring these claims and that her claims are not ripe because she successfully renewed her driver's license. Espinoza responds that she was discriminated against at the DPS office because she could not access the fingerprint device and by the requirement that she submit to a comprehensive examination.

#### 1. Standing

The Fifth Circuit Court of Appeals has noted the requirements for a plaintiff to establish Article III standing:

> At an irreducible constitutional minimum, to have standing, plaintiffs must establish three elements. First, plaintiffs must show that they have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second plaintiffs must

> establish a causal connection between the injury and the conduct complained of. Finally, it must be likely that the injury will be redressed by a favorable decision.

*Cole v. General Motors Corp.*, ___ F.3d ___, 2007 WL 1054697, *4 (5th Cir. Apr. 10, 2007) (internal citations and quotations omitted). That court has also noted that "the Supreme Court expressly rejected the argument that the injury in fact requirement was limited to significant injuries, noting that it has upheld the standing of plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, a $5 fine and costs, and a $1.50 poll tax." *Ass'n of Community Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999) (internal quotations and brackets omitted) (citing *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973)). Defendants argue that Plaintiff has not established that she has been injured, and therefore she lacks standing to bring her claims.

Although Plaintiff did successfully renew her license, the court finds that Plaintiff sufficiently alleged that she has been injured by the actions of Defendants. She alleges that was discriminated against: she had difficulty reaching the fingerprint device at the DPS office; DPS violated its own guidelines in referring her to a comprehensive examination; and though DPS has not required her to take a comprehensive examination, she argues that the request is outstanding and has never been withdrawn. Espinoza also argues that she had to retain an attorney to respond to the DPS letter requiring her to submit to a comprehensive examination. The court finds that Plaintiff's Complaint satisfies the requirements of Article III standing, and accordingly, **denies** Defendants' motion to dismiss her complaint on those grounds.

**2. Ripeness**

Defendants also argue that Espinoza's challenge to the DPS procedures is not ripe because the existence of the regulations has not required her to change her conduct. Espinoza argues that

her claim is ripe because the questioned regulation has been applied to her and DPS has taken concrete action.

Defendants cite *National Park Hospitality Association v. Department of Interior* in support of this argument. 538 U.S. 803 (2003). As the Supreme Court noted in that case:

> Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Id*. at 807-808. Unlike a regulation that is simply on the books, the court finds that because DPS applied its regulation to her and requested that she take a comprehensive examination, her claim is ripe for adjudication. Espinoza has alleged specific harm to her because of DPS's actions, and accordingly, the effects of DPS guidelines have had a "concrete" effect on Plaintiff. Accordingly, the court **denies** Defendants' motion to dismiss Plaintiff's Complaint as unripe.

**B. Defendants' Supplemental Motion to Dismiss**

Defendants also move to dismiss Plaintiff's claims, arguing that Plaintiff failed to plead (1) that she was the beneficiary of a particular federal grant program, and (2) that DPS receives federal monies to conducts its driver's license renewal program. The court finds it strange that Defendants would file this motion, when not only did Plaintiff specifically plead both contentions, but Defendants *admitted* these allegations in their Answer.

As to the first alleged deficiency, Plaintiff pleaded that she "was granted a Texas driver's license on June 30, 1983" and that "[r]eceipt of a driver's license is a benefit of a program receiving Federal financial assistance . . . and a service, program or activity conducted by a public entity." Compl. ¶¶ 6,8. Defendants "admit[] that Plaintiff was granted a Texas driver's license on June 30,

1983" and "[a]dmit [paragraph 6], except that a driver's license is a privilege, not a right of citizenship in Texas." Defs.' Second Am. Answer ("Answer") ¶¶ 6, 8. Next, Plaintiff alleges that Defendant DPS "is an agency of the State of Texas that conducts programs or activities receiving Federal financial assistance as defined by the Rehabilitation Act, . . . and a public entity as defined by Title II of the ADA." Compl. ¶ 4. Defendants' response to this specific allegation is "Admit." Answer ¶ 4.

The court determines that Plaintiff's allegations are sufficient to meet the standard set in this circuit: "to state a § 504 claim a plaintiff must allege that the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance." *Lightbourn v. County of El Paso, Texas,* 118 F.3d 421 (5th Cir. 1997), *cert. denied,* 522 U.S. 1052 (1998). Given that Plaintiff has made such allegations– and they have been admitted by Defendants– the court **denies** Defendants' supplemental motion to dismiss.

**C. Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment on her claims under Title II of the ADA and the Rehabilitation Act, "to enjoin the illegal and discriminatory actions of Defendants." Pl.'s Mot., at 2. Plaintiff asserts that she has established the elements for both claims, and has provided the court with a lengthy appendix supporting her motion.[1] Defendants argue that Plaintiff's claims fail because Defendants have Eleventh Amendment immunity to her claims for injunctive relief, that

[1]Defendants also cite to Plaintiff's Appendix and note that Plaintiff has filed every document produced in this case. Defs.' Resp. at 2 n.7. Indeed, the appendix exceeds 700 pages and includes lengthy deposition transcripts. The court is under no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 164 (5th Cir. 2006). Accordingly, the court refers to the portions of the appendix cited by the parties in determining this motion. The court frowns on this type of mass submission, as it unnecessarily burdens the record and consumes scarce judicial resources, and will not permit it during the trial of this action.

Texas has a special sovereignty interest in its procedures for the renewal of driver's licenses, and material fact issues remain with regard to: (1) access to counters and fingerprint devices at the DPS office and (2) the DPS policy related to requests for comprehensive examinations. Defendants also argue that Plaintiff has failed to establish that DPS receives federal funding and that Plaintiff is an intended beneficiary of any federal funding. The court has addressed this last argument above and will not revisit it here.

### 1. Elements of Plaintiff's Title II and Rehabilitation Act Claims

To establish a claim pursuant to Title II of the ADA, a plaintiff must establish: (1) that she is a qualified individual within the meaning of the Act; (2) that she is being excluded from participation in, or being denied benefits of, services, programs, or activities for which Defendants are responsible; and (3) that such exclusion, denial of benefits, or discrimination is by reason of her disability. *Lightbourn*, 118 F.3d at 428. Similarly, section 504 of the Rehabilitation Act provides: "no otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794(a).

The Fifth Circuit Court of Appeals has recognized that "the rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the Rehabilitation Act." *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005), *cert.denied*, 126 S.Ct. 1888 (2006); *see also* 42 U.S.C. § 12133 (stating that the "remedies, procedures, and rights" of Title II of the ADA are the same as those set forth in the Rehabilitation Act).

Defendants do not dispute that Espinoza is a "qualified individual with a disability," and as noted above, have admitted that DPS is a public entity or agency of the state receiving federal funding and that receipt of a driver's license is a benefit of the services, programs, or activities of DPS. The dispute before the court is whether Plaintiff was subjected to discrimination by DPS by reason of her disability, whether Plaintiff's claims for damages and attorneys' fees are barred by the Eleventh Amendment, and whether the state of Texas has a special sovereignty issue with the regard to its procedures for driver's license renewal.

**2. Plaintiff's Claims of Discrimination**

**a. Access**

Espinoza argues that she was discriminated against on the basis of her disability because the DPS office where she renewed her license did not have accessible counters or fingerprint devices. Defendants argue that the summary judgment evidence shows that accessible counters and fingerprint devices were available at that office. The court has reviewed the portions of the appendix referenced by the parties and concludes that the Espinoza Affidavit, the accessibility surveys, and the deposition testimony of Greg Gloria, the Assistant Chief of the Driver License Division, and Marilyn Hlavenka, who renewed Espinoza's license, create a genuine issue of material fact as to whether the DPS office was accessible and whether Espinoza was denied access to the counter and fingerprint device to renew her driver's license.

The court cannot determine what DPS office is at issue here, a point made by Defendants that is not rebutted by Plaintiff. The complaint refers to Espinoza renewing her driver's license at a Mesquite office of the DPS. Compl. ¶ 10. Yet, Plaintiff's "Undisputed Facts" section of her motion refers both to the Mesquite office and a Grand Prairie DPS office. Pl.'s Facts ¶¶ 13, 15. The

accessibility surveys attached in the appendix are for a DPS office in McKinney, Texas. App. at 190, 764. The deposition testimony of Gloria refers to the McKinney office, which he testified is the office where Espinoza renewed her driver's license. App. at 45, 47-48. Hlavenka's testimony also refers to the McKinney office. App. at 448-450.

Defendants argue that Plaintiff is not entitled to prospective injunctive relief, because the DPS office in McKinney has closed. Plaintiff concedes that she "makes no such claim" regarding injunctive relief on this ground, therefore the court does not consider this argument. Pl.'s Reply at 2 n.4.

Finally, Defendants argue that Plaintiff is not entitled to summary judgment against Defendant Davis, because she has failed to identify any evidence of any act by him. As Plaintiff argues, courts in this circuit have held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 414, *reh'g denied*, 391 F.3d 676 (5th Cir. 2004). Given the fact issues identified above, Plaintiff is not entitled to summary judgment on her claims against Defendant Davis.

**b. DPS Regulations regarding Comprehensive Examinations**

Plaintiff also contends that she was subject to "numerous and repeated acts of discrimination" in the process of renewing her driver's license. Pl.'s Mot. at 16. Specifically, she argues that the examiner failed to ask her questions about the progression of her disability. She alleges that the examiner failed to call the DPS office in Austin to determine the medical information on file about Plaintiff. Espinoza contends that the examiner did not give her a driving examination or consult with her supervisor. Espinoza alleges that the examiner sent a DL-44 form to Austin

describing Espinoza's physical condition. Espinoza contends that the DPS Driver Improvement Bureau sent her a letter requiring her to have a comprehensive examination within thirty days. Espinoza alleges that DPS did no further investigation after being contacted by her, and sent another letter demanding that she take a comprehensive examination.

Espinoza's allegations amount to a claim that DPS failed to comply with its own regulations regarding when a driver will be subject to a comprehensive examination. Specifically, she points to Texas Administrative Code title 37, Rule 15.81, which provides "criteria for driver improvement action."[2] Section (c) of Rule 15.81 regards "reexamination of drivers":

> (c) Reexamination of drivers. Guidelines for reexamination of drivers are based on traffic record and physical disability.
>
> > (1) A minimum of six entries (convictions for moving traffic law violations and accidents where negligence is indicated) in a two-year period with a minimum of three entries within the 12-month period proceeding the examination request.
> >
> > (2) When it is determined by a driver improvement analyst following a review of two or more accident involvements within a 12-month period that the licensee requalify by demonstrating his qualifications for the type license held.
> >
> > (3) Recommended by proper medical authority following a professional evaluation of the medical facts.
> >
> > (4) Recommendation by an experienced field representative of the department following a thorough investigation showing clear and convincing evidence that such examination is reasonable and necessary.

---

[2]Plaintiff attaches a copy of Rule 15.81 in her appendix and Defendants also refer to the appendix when discussing the rule. App. at 417-419. Rule 15.81, however, appears to have been amended on February 6, 2001, and June 22, 2004, and the section now is a "definition of terms" that is different from the rule cited to by the parties. *See* 37 TEX. ADMIN. CODE § 15.81. The court will refer to the appendix for the text of Rule 15.81, as the parties do not dispute the validity or enforcement of Rule 15.81 as currently promulgated.

> (5) Comprehensive medical examinations will normally consist of the vision, rules, and signs tests and driving demonstration. Medical evaluation by the Medical Advisory Board may also be required.
>
> (6) The driving demonstration conducted is to determine if restrictions or limitations should be imposed. The driving performance may be more extensive or intensive than on routine driving tests so that persons whose ability appears in doubt are not deprived of license if they can demonstrate ability to drive safely under limited conditions.

App. at 418-19.

Plaintiff argues that DPS discriminated against her in its application of Rule 15.81(c)(4), because it did not complete a "thorough investigation showing clear and convincing evidence that such examination is reasonable and necessary." App. at 418. Defendants cite another section of Rule 15.81 supporting their actions, section (a)(10), which provides:

> (a) When a licensee's traffic record indicates corrective action is needed to protect the motoring public, such action is based upon a predetermined criteria established by the department. . . .
>
> > (10) Reliably reported to be seriously handicapped or incapable to drive safely. Investigation or examination which may include referral to the medical advisory board or both.

App. at 417. The court agrees with Plaintiff that section (a)(10) is inapplicable here, because it only applies when a "licensee's traffic record indicates corrective action is needed." *Id*. Defendants admit that Plaintiff has never received a citation or been involved in any accident in Texas. Compl. ¶ 9; Answer ¶ 9.

Accordingly, the question before the court is whether Defendants violated Rule 15.81(c)(4) in renewing Plaintiff's driver's license. Plaintiff argues that Defendants engaged in no investigation before referring her to a comprehensive examination. Defendants argue that there is a fact issue regarding whether the examiner violated the DPS policy by sending a DL-44 form to Austin when

she renewed Espinoza's driver's license. The court agrees with Defendants and determines that fact issues exist as to whether Defendants violated Rule 15.81, including whether there was a thorough investigation and whether there was clear and convincing evidence that a comprehensive evaluation was necessary. Accordingly, summary judgment is improper at this stage.

### 3. Eleventh Amendment Immunity

Defendants argue that Plaintiff is not entitled to retroactive monetary damages and attorney's fees, because they are barred by the Eleventh Amendment. Plaintiff concedes that she is not seeking such damages in the motion before the court, and accordingly, the court does not reach this argument.

### 4. Special Sovereignty Interest

Finally, Defendants argue that Plaintiff's motion should be denied because the Texas driver's license program relates to a "special sovereignty interest" of the state of Texas. As Plaintiff notes, Defendants have already unsuccessfully raised this argument in this court,[3] and the court will not revisit the issue. Because Defendants have raised various fact issues that remain, however, the court **denies** Plaintiff's Motion for Partial Summary Judgment.

## IV. Conclusion

For the reasons stated herein, the court hereby **denies** Defendants['] Motion to Dismiss and Alternatively Motion for Summary Judgment, **denies** Plaintiff[']s Motion for Partial Summary

---

[3]The court, in its previous order, held that because the relief sought by Plaintiff was prospective injunctive relief requiring DPS to follow its own regulations and enjoining Defendants from treating persons with disabilities in a discriminatory manner, whatever the state's special sovereignty interest in the power to regulate driver's licensing was not implicated. Mem. Op. and Order (Sept. 30, 2002) at 10.

Judgment, and **denies** Defendants['] First Supplemental Motion to Dismiss Rehabilitation Act Claims.

**It is so ordered** this 11th day of May, 2007.

Sam A. Lindsay
United States District Judge